UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

PRISCILLA TOBIAS,                    Case No. 07-15276

                 Plaintiff,          Thomas L. Ludington
v.                                   United States District Judge

COMMISSIONER OF                      Michael Hluchaniuk
SOCIAL SECURITY,                     United States Magistrate Judge

                 Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 11, 14)**

**I.     PROCEDURAL HISTORY**

        A.     Proceedings in this Court

        On December 11, 2007, plaintiff filed the instant suit seeking judicial

review of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge

Thomas L. Ludington referred this matter to Magistrate Judge Steven D. Pepe for

the purpose of reviewing the Commissioner's decision denying plaintiff's claim

for a period of disability and disability insurance benefits.  (Dkt. 2).  On January

14, 2008, this matter was reassigned to the undersigned.  (Dkt. 3).  This matter is

currently before the Court on cross-motions for summary judgment. (Dkt. 11, 14).

    B.    <u>Administrative Proceedings</u>

Plaintiff filed the instant claims on September 16, 2004, alleging that she became unable to work on February 1, 1995. (Tr. at 47). The claim was initially disapproved by the Commissioner on October 29, 2004. (Tr. at 39-43). Plaintiff requested a hearing and on May 10, 2007, plaintiff appeared with counsel before Administrative Law Judge (ALJ) Peter Dowd, who considered the case *de novo*. At the hearing, plaintiff amended her alleged onset date to September 1, 1996. (Tr. at 394). In a decision dated May 22, 2007, the ALJ found that plaintiff was not disabled. (Tr. at 15-24). Plaintiff requested a review of this decision on June 1, 2007. (Tr. at 13). The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on November 28, 2007, adopted the ALJ's findings. (Tr. at 3-7); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that plaintiff is not disabled. Accordingly, it is **RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED**, defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.   STATEMENT OF FACTS

### A.   ALJ Findings

Plaintiff was 60 years of age at the time of the most recent administrative hearing.  (Tr. at 398).  Plaintiff's relevant work history included approximately 14 years as a housekeeper, cook, nurse attendant, and a cashier.  (Tr. at 21).  In denying plaintiff's claims, defendant Commissioner considered hypertension with obesity as a possible bases of disability.  (Tr. at 18).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since September 30, 1996.  (Tr. at 20).  At step two, the ALJ found that plaintiff's hypertension and obesity were "severe" within the meaning of the second sequential step, but found that plaintiff's severe impairments did not preclude her from performing her past relevant work before the last date insured.  (Tr. at 18).

As noted by the ALJ, the only medical evidence in the record for the period in question is doctor office notes dated August 1996.  (Tr. at 21).  These notes were unrelated to plaintiff's alleged impairments.  *Id*.  The medical evidence dated before and after plaintiff's date last insured showed that she used hypertension medication and the ALJ assumed that the medication controlled plaintiff's hypertension.  (Tr. at 21).  The ALJ reviewed the state agency medical consultant

report, which concluded that plaintiff's impairments were "not severe." (Tr. at

21). The ALJ noted that, while "in may ways the evidence (and lack of it) for the

period of time at issue is supportive of this conclusion I have continued in the

sequential evaluation of disability so as to ensure I have given the claimant the

benefit every doubt as to the severity of the claimant's impairments during

the period of time at issue." (Tr. at 21).

The ALJ accurately summarized plaintiff's testimony as follows:

> The claimant testified at the hearing that she believed she
> could not between September I and September 30, 1996,
> done work requiring extensive standing and walking
> (such as her past work as a cashier and adult care
> provider). She stated that she had periods of exhaustion
> and swelling in her ankles and feet in 1996. She also
> reported having had problems with confusion (e.g., she
> could not remember prices of products she was ringing
> up as a cashier). The claimant told us at the hearing that
> she never went to the doctor much in the early and mid
> 1990s and that she did not seek physician help at that
> time for all the problems she was having. The claimant
> said that during the mid 1990s she had to cope with
> several family deaths, including her mother, and that she
> did not leave her home very much during this period of
> time. However, she said that while at home she was
> doing much gardening which she enjoyed very much.
> She and her husband appear to have been happily
> married in the 1990s and even now. The claimant told
> me that she was driving in the 1990s and now. She also
> told me about how much she likes to gamble at the local
> casino in Mt. Pleasant.

(Tr. at 22).  The ALJ concluded that some of plaintiff's activities in the 1990s at the time of hearing, contradicted her statements that she could not have worked as of and after September 30, 1996.  (Tr. at 22).  The ALJ concluded that, after reviewing the medical record including the testimony at the hearing with respect to the severity limitations and restrictions, the record does not support plaintiff's allegation that her symptoms result in a residual functional capacity that would preclude her from performing any work.  (Tr. at 23).  The ALJ pointed to a lack of evidence that she required hospitalization for any physical or mental difficulties, surgical intervention or other aggressive treatments.  *Id*.

Further, plaintiff obtained good results from prescribed medications when taken as instructed and the record revealed no significant complaints of medication side effects or ineffectiveness that might reasonably prevent plaintiff from completing an eight-hour workday.  (Tr. at 23).  There was simply no documentation of any functional restrictions as a result of plaintiff's impairments. (Tr. at 23).  Thus, the ALJ founds that plaintiff's allegations were not credible in light of the medical and other evidence in the record.  (Tr. at 23).

B.   Appeals Council Findings

The Appeals Council agreed with the ALJ's findings under step 1 of the sequential evaluation, but, at step 2 of the sequential evaluation, concluded that

the ALJ did not reconcile his finding with the October 14, 2004 state agency

medical consultant's opinion that there were no medical sources to substantiate

that plaintiff's impairments were severe before the date last insured.  (Tr. at 7).

The Appeals Council pointed to the state agency consultant's opinion that

plaintiff's heart problems began in late 1999 or early 2000 and not before this

date. (Tr. at 7).  Thus, the Appeals Council concluded that the ALJ incorrectly

found that plaintiff had severe impairments.  (Tr. at 7).  The Appeals Council

revised Finding No. 3 in the ALJ's May 22, 2007 decision "to find that claimant

did not have a severe medically determinable impairment or combination of

impairments that significantly limited her ability to perform basic work activities

prior to September 30, 1996."  (Tr. at 7).  Thus, the Appeals Council affirmed the

ALJ's conclusion that plaintiff was not disabled.  (Tr. at 7).

      C.    <u>Parties' Arguments</u>

           1.    Plaintiff's claims of error

Plaintiff explains that the issue at Step 2 of the sequential evaluation is

whether the individual has a severe impairment. (Dkt. 11).  At Step 2 "severe"

means any impairment or combination of impairments which significantly limits

the individual's ability to do basic work activities.  (Dkt. 11).  Plaintiff argues that

the concept of "severe" at Step 2 does not require that the condition be disabling,

which is a determination that will be made pursuant to other relevant criteria at Step 3 or Step 5. Rather, plaintiff asserts that the analysis at Step 2 is based solely on consideration of medical evidence without any consideration of age, education or past work history. (Dkt. 11, citing, 20 C.F.R. §§ 404.1520(c), 416.920(c)). In the case at hand, the ALJ had concluded that Ms. Tobias suffered from a severe impairment of "hypertension with obesity." (Dkt. 11, citing, Tr. at 21). The Appeals Council, however, altered the ALJ's decision because the ALJ "did not reconcile his finding with the October 14, 2004 state agency medical consultant's opinion that there were no medical sources to substantiate that claimant's impairments were severe prior to the date last insured." (Dkt. 11, citing, Tr. at 7). Plaintiff argues that the Appeals Council was incorrect because the ALJ discusses the October 2004 opinion of Dr. Bartone in his decision, but ultimately opines that "I have continued in the sequential evaluation of disability so as to ensure I have given the claimant the benefit [of] every doubt as to the severity of the claimant's impairments during the period of time at issue." (Dkt. 11, citing, Tr. at 21).

Plaintiff points to an August 1996 note dealing directly with plaintiff's hypertension, "which did not seem to be adequately controlled, and her chronic obesity problem." (Dkt. 11). Plaintiff complained of swelling in her lower legs, ankles and feet, "off and on." (Dkt. 11, citing, Tr. at 372). Plaintiff also points to

her testimony at the hearing that she would not have been able to perform her past relevant work because of swelling, which is a symptom that can be attributable to hypertension. (Dkt. 11). Plaintiff argues that another symptom that can be attributable to hypertension is confusion, which plaintiff also testified to at the hearing. (Dkt. 11, citing, Tr. at 408, 411-413).

And, plaintiff argues that her back impairment was overlooked. In August 1996, plaintiff complained of "lower back pain." (Dkt. 11, citing, Tr. at 21). In October 1993, plaintiff complained about a "backache." (Dkt. 11, citing, Tr. at 376). In October 1994, plaintiff again complained about a "backache." (Dkt. 11, citing, Tr. at 374). In July 2000, when plaintiff complained about back pain, an x-ray was performed on July 11, 2000, in connection with her complaints of back pain, and plaintiff was found to have moderate degenerative disc disease and spondylosis at T-7/T-8, T-8/T-9 and T-9/T-10 with associated anterior marginal spurring and endplate sclerosis. (Dkt. 11, citing, Tr. at 174, 189). Plaintiff argues that these "moderate changes did not occur overnight or even in a twelve month period," rather, "this is a condition that had plagued Ms. Tobias for many years and it should not be held against her that a physician did not choose to perform diagnostic testing until four years after her date last insured or seven years after her first complaint of back pain." (Dkt. 11). Plaintiff requests for a reversal of the

decision denying benefits and a remand for further proceedings to consider and evaluate the medical records regarding plaintiff's functional limitations, as well as her testimony about those limitations.

2.      Commissioner's counter-motion for summary judgment

The Commissioner points out, just as the ALJ stated, that plaintiff bears a heavy burden and significant evidentiary issues because, to establish entitlement to DIB, she was required to prove that she was disabled between September 1, 1996, the date on which she alleged she became disabled, and September 30, 1996, the date on which her insured status expired.  (Dkt. 14, citing, Tr. at 394).  The Commissioner argues that substantial evidence supports the Appeals Council's finding, and asks the Court to affirm that finding and affirm the Commissioner's decision that plaintiff was not disabled during the relevant period.

In this case, the Commissioner argues that the Appeals Council properly found that the evidence in the record simply failed to support the existence, before September 30, 1996, of any impairment that significantly limited plaintiff's ability to work, and that plaintiff points to no evidence to support her claim that she had a severe impairment during that period.  (Dkt. 14, citing Tr. at 7).  Instead, relies on a record dated August 1996, which merely demonstrates that, at that time, she complained of swelling in her ankles and feet and of a backache.  (Dkt. 14,

citing, Tr. at 372).  The Commissioner argues that plaintiff's complaint about

"transient symptoms" is insufficient to establish the presence of a severe

impairment.  The Commissioner relies on the SSA regulations, which provide that

a claimant's statements about symptoms will be considered, but those statements

cannot alone establish that a claimant is disabled; there must be medical signs and

laboratory findings that show that the individual has impairments that could

reasonably be expected to produce the alleged symptoms.  (Dkt. 14, citing, 20

C.F.R. § 404.1529(b)).

The Commissioner also argues that, to the extent that a physician's report is

based on a claimant's allegations, it is equally insufficient to establish disability.

(Dkt. 14, citing, *Young v. Sec'y of Health & Hum. Servs.*, 925 F.2d 146, 151 (6th

Cir. 1990) (report based on claimant's subjective complaints did not constitute

objective evidence of claimant's alleged disabling psychological pain)).  According

to the Commissioner,  plaintiff points to no evidence from the relevant period or

relating to the relevant period that can reasonably be interpreted to establish the

existence of a severe impairment during that time.  Indeed, according to the

Commissioner, the record in this case does not include a physician's opinion as to

what functional limitations, if any, plaintiff experienced before September 30,

1996.  Thus, the Commissioners asserts that the Appeals Council reasonably

Report and Recommendation
Cross-Motions for Summary Judgment
*Tobias v. Comm'r*; No. 07-15276

concluded that plaintiff had no severe impairment before September 30, 1996 and was, therefore, not disabled.  (Dkt. 11).

The Commissioner also discounts the post-September 30, 1996 medical evidence on which plaintiff relies because the x-ray occurred nearly four years after her September 30, 1996 and, in any event, it merely showed moderate degenerative disc disease and spondylosis.  (Dkt. 14, citing, Tr. at 189). The Commissioner argues the evidence of plaintiff's condition does not establish that plaintiff "experienced any functional limitations as a result of her condition even in 2000, let alone nearly four years earlier."  (Dkt. 14).  Thus, the Commissioner argues, the substantial evidence supports the Appeals Council's finding that plaintiff was not disabled at the second step of the sequential evaluation process. (Dkt. 14).

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial

determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts." *Felisky v. Bowen, 35 F.3d 1027, 1035 (6th Cir. 1994)* (citations omitted), citing, *Mullen, 800 F.2d at 545*.

The scope of this Court's review is limited to an examination of the record only. *Bass, 499 F.3d at 512-13*; *Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001)*. When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992)*. "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the *Appeals Council.*" *Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 535 (6th Cir. 2001)*. There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec., 167 Fed.Appx. 496, 508 (6th Cir. 2006)* ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec., 198 Fed.Appx. 521, 526 (6th Cir. 2006)*.

B.    Governing Law

1.    Burden of proof

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq.*) and the

Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381

*et seq.*).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

2.      Substantial evidence

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

Report and Recommendation
Cross-Motions for Summary Judgment
*Tobias v. Comm'r*; No. 07-15276

_McClanahan_, 474 F.3d at 833; _Mullen_, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

The opinion of a treating physician should be given controlling weight if it

is "well-supported by medically acceptable clinical and laboratory diagnostic

techniques" and is not "inconsistent with the other substantial evidence in [the]

case record."  _Wilson_, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2).  A physician

qualifies as a treating source if the claimant sees her "with a frequency consistent

with accepted medical practice for the type of treatment and/or evaluation required

for [the] medical condition." 20 C.F.R. § 404.1502.  "Although the ALJ is not

bound by a treating physician's opinion, 'he must set forth the reasons for

rejecting the opinion in his decision.'"  _Dent v. Astrue_, 2008 WL 822078, *16

(W.D. Tenn. 2008) (citation omitted).  "Claimants are entitled to receive good

reasons for the weight accorded their treating sources independent of their

substantive right to receive disability benefits." _Smith v. Comm'r of Social_

_Security_, 482 F.3d 873, 875 (6th Cir. 2007).  The ALJ is only required to give

weight to a treating doctor's opinion if that opinion is supported by sufficient

clinical findings and is consistent with the remaining evidence.  _Bogle v. Sullivan_,

998 F.2d 342, 347-48 (6th Cir. 1993).

C.     Analysis and Conclusions

The undersigned suggests that the decision of the ALJ, as modified by the Appeals Council is supported by the substantial evidence for several reasons. First, there is no evidence whatsoever in the record establishing or even suggesting that plaintiff was functionally limited in any way.  Plaintiff's reliance on her testimony that swelling prevented her from working, along with an August 1996 note stating that her hypertension "did not seem to be adequately controlled" is unavailing.  (Tr. at 372).  Plaintiff complained of similar symptoms in 1990, while she was working without any apparent limitations.  (Tr. at 145).  Moreover, no treating physician has ever opined that plaintiff was functionally restricted in any respect.  *See Maher v. Sec'y of Health and Human Serv.*, 898 F.2d 1106, 1109 (6th Cir. 1987), citing, *Nunn v. Bowen*, 828 F.2d 1140, 1145 (6th Cir. 1987) ("lack of physical restrictions constitutes substantial evidence for a finding of non-disability.").

Second, plaintiff's assertion that an x-ray from 2000 showing moderate degenerative disc disease and spondylosis, coupled with sporadic complaints of "backaches" in the years before her last date insured, is wholly insufficient to establish any functional limitation.  Even if the four-year lapse between plaintiff's last date insured and the x-ray were discounted, essentially, plaintiff asserts that

19

the mere existence of a particular condition equates to a functional limitation and disability.  This is simply not so.  The residual functional capacity circumscribes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from-though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002).  "A claimant's severe impairment may or may not affect his or her functional capacity to do work.  One does not necessarily establish the other." *Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, *5 (E.D. Mich. 2004).  "The regulations recognize that individuals who have the same severe impairment may have different [residual functional capacities] depending on their other impairments, pain, and other symptoms." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed.Appx. 425, 429 (6th Cir. 2007); 20 C.F.R. § 404.1545(e). Thus, the mere existence of any condition from which plaintiff may have suffered (even if plaintiff could show that she suffered from a back condition before September 30, 1996) does not establish any functional limitation or disability. Additionally, plaintiff's "backache" complaints before September 30, 1996 appear to be mostly related to recurrent bladder infections.  (Tr. at 374 (note dated 10/31/94 "c/o of backache...thinks may have cystitis"); 376 (noted dated 10/21/93 "pt. c/o nausea & backache - burning on urination").  Thus, plaintiff's suggestion

that the x-ray from 2000 merely confirms the source of plaintiff's back complaints over the years is not supported by the record.

Third, the ALJ's findings regarding plaintiff's credibility are fully supported by the substantial evidence in the record. When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker, 670 F.2d 81, 84 (7th Cir. 1982)* ("a trier of fact is not required to ignore incentives in resolving issues of credibility."); *Krupa v. Comm'r of Soc. Sec.*, 1999 WL 98645, *3 (6th Cir. 1999)*; *Jones*, 336 F.3d at 475 (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability."); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). While the ALJ found plaintiff to be "sincere," he found no support for her claimed limitations in the medical records.

This is not simply a case where some contradictions between the plaintiff's testimony and the medical records exist. Rather, there is a complete dearth of medical evidence to support plaintiff's claimed limitations before plaintiff's last date insured. Moreover, the medical evidence in the record after plaintiff's last date insured also does not support any significant limitations or restrictions. For

21

example, plaintiff was seen by her family physician for management of her hypertension in 2003; plaintiff reported "feeling well" and "no current complaints." (Tr. at 203). Further, her cardiologists reported that her hypertension was "well-controlled" and "controlled" in 2001 and 2004. (Tr. at 259, 262). In 2000 and at other times in 2003, her hypertension was reported as "borderline-controlled." (Tr. at 261, 266). While plaintiff may have suffered from transient symptoms related to her hypertension, there is no suggestion in the medical records that plaintiff's hypertension resulted in any functional limitations. Moreover, while plaintiff testified that she was "confused" when she was working and now suggests that her confusion may be related to her hypertension, this suggestion finds no support in the medical records, in particular, those records dated before plaintiff's last date insured. Under the circumstances, the ALJ's credibility analysis was complete, appropriate, and fully supported by substantial evidence.

After review of the record, I conclude that the decision of the ALJ, as modified by the Appeals Council, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## IV.   RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED**, defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## V.   REVIEW

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 10 days of service, as provided for in 28 U.S.C. § 636(b)(1) and Local Rule 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 10 days after service of an

objection, the opposing party must file a concise response proportionate to the

objections in length and complexity.  The response must specifically address each

issue raised in the objections, in the same order, and labeled as "Response to

Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that

any objections are without merit, it may rule without awaiting the response.

<div style="margin-left:50%">

s/Michael Hluchaniuk

Michael Hluchaniuk

United States Magistrate Judge

</div>

## CERTIFICATE OF SERVICE

I certify that on February 27, 2009, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send electronic notification to the following: Mikel E. Lupisella, Susan K. DeClercq, AUSA, and Commissioner of Social Security.

<div style="margin-left:50%">

s/Darlene Chubb

Judicial Assistant

</div>

Report and Recommendation
Cross-Motions for Summary Judgment
*Tobias v. Comm'r*; No. 07-15276